<table>
<tr><td>120</td><td>573</td></tr>
<tr><td>205</td><td>103</td></tr>
</table>

## WILLIAM SHOWERS v. THE COMMONWEALTH.

### ERROR TO THE COURT OF OYER AND TERMINER OF LEBANON COUNTY.

Argued May 7, 1888—Decided May 28, 1888.

That, upon a venire for forty-eight petit jurors for a court of Oyer and Terminer, there were drawn and returned forty-eight names, but among them the names of two persons who at the time of the drawing were deceased and the name of one person who had then removed from the county,—the evidence showing the fairness and good faith of the officers,—is no ground for quashing the array on motion of a defendant.

Before GORDON, C. J., PAXSON, GREEN and WILLIAMS, JJ.; TRUNKEY, STERRETT and CLARK, JJ., absent.

No. 361 January Term 1888, Sup. Ct.; court below, No. 3 June Term 1887, O. & T.

On June 8, 1887, the grand jury returned as a true bill an indictment charging William Showers with the murder of William Kahler.

When the cause was called for trial on September 23, 1887, after a continuance from June term, the prisoner being arraigned in due form of law pleaded guilty of the felony charged, in the manner and form as he stood indicted; whereupon, the court proceeded by the examination of witnesses, in the presence of the prisoner and his counsel, to determine the degree of the felony. During this examination, the prisoner made application to be permitted to withdraw his plea of guilty, and to substitute the plea of not guilty. On November 30, 1887, the court set aside all the proceedings after the return of the indictment, including prisoner's arraignment and plea.

On December 15, 1887, the prisoner being brought into court for trial, his counsel moved to quash the array of petit jurors for the term, upon the ground that but forty-eight names were drawn from the wheel, of which two were the names of persons who were then deceased, and one, the name of a person who had previously removed from the county, so that but forty-five persons, who were living and resident, were drawn and summoned as jurors. After a hearing of testimony showing the facts sufficiently appearing in the opinion of this court, the court below, McPHERSON, P. J., overruled the motion.

The prisoner, being then called to the bar a second time and duly arraigned, pleaded, not guilty, when issue was joined. The jury then called and sworn, on December 18, 1887, returned a verdict of guilty. A motion in arrest of judgment and for a new trial was overruled and on February 4, 1888, on motion of the district attorney judgment was passed. Thereupon the prisoner took this writ, assigning as error, inter alia, the refusal of the motion to quash the array of jurors.

*Mr. A. Frank Seltzer,* for the plaintiff in error:

1. Section 113, act of April 14, 1834, P. L. 39, provides that the number of persons who shall be summoned and returned to serve as petit jurors, shall not be less than forty-eight; and § 119, of the same act, provides that if any of the persons, whose names shall be drawn, shall have removed from the county or shall be dead or absent, the sheriff and commissioners shall destroy the slips containing the names of the persons so removed or dead, and proceed to draw other names, until the panel is completed. The maxim, Ignorantia legis neminem excusat, is, as said by Mr. Justice ROGERS, in Rankin v. Mortimere, 7 W. 374, "among the settled elements of the law, for every man at his peril is bound to take notice what the law is. It is an unquestionable principle, which applies to civil as well as to criminal cases."

2. If the sheriff and jury commissioners need not summon and return forty-eight living men, how many less will do? This court has said in Donaldson v. Commonwealth, 95 Pa. 24, that thirty-eight are not sufficient, and we may well ask, do forty-five suffice? Moreover, the omission of the sheriff and

jury commissioners to destroy the slips containing the names of the persons known by them to be dead, was in itself a violation of the provision of § 119 of the act. This provision is mandatory, as this court has held : Rolland v. Commonwealth, 82 Pa. 306.

3. It is not to the actual attendance in court of less than forty-eight jurors, to which exception is taken, but to the fact that forty-eight jurors were never impaneled and summoned and consequently could not be returned, and that the sheriff and jury commissioners actually and knowingly summoned only forty-five jurors, in direct violation of law. " To constitute a competent court, several things are necessary : the presence of a presiding judge and jurors, grand and petit, drawn, summoned and impaneled according to law: " Clark v. Commonwealth, 29 Pa. 129.

*Mr. A. W. Ehrgood, District Attorney* (with him *Mr. J. M. Funck*), for the defendant in error :

1. We submit that the law applicable to the decision of these two questions has been clearly announced by this court in the following cases, viz.: Rolland v. The Commonwealth, 82 Pa. 306, and Foust v. The Commonwealth, 33 Pa. 338. In the former of these cases it was held by this court: "That it is no ground of challenging an array of jurors that the number of persons drawn was the minimum number forty-eight, required by law, of whom only forty-five were summoned, two of the persons drawn being returned 'not found,' and a third returned as 'dead,' when the sheriff did not know at the time of drawing of the death or removal of those not summoned. It is not a right of a defendant to have forty-eight jurors in actual attendance in the Oyer and Terminer. . . . . . It is not a ground of challenge that the sheriff and jury commissioners did not destroy the slips containing the names of the jurors, absent or dead, and draw others in their stead, where such absence or death was not known to them at the time of drawing."

2. It will be observed that the only distinction between the case just quoted and the case to which the attention of the court is now addressed, is that in the former the absence or death of the jurors was not known to the sheriff and jury

commissioners, while in the latter such death was known, but the sheriff and jury commissioners, from a mistaken sense of the law, after having fully discussed their duty in the premises, considered it imperative upon them to place upon the panel the names of such jurors as were dead, and to allow the slips containing their names to remain undestroyed.

3. It is contended by the learned counsel of the plaintiff in error, that the terms of the act of assembly, governing these questions are mandatory. If such be the case, how could the sheriff and jury commissioners in the case of Rolland v. The Commonwealth, supra, escape the mandatory character of the act on account of their ignorance, at the time of drawing, of the death or removal of those not summoned? How can the act of assembly be mandatory, when it provides in plain terms that the minimum number of petit jurors in a Court of Oyer and Terminer shall not be less than forty-eight and when the summoning and returning for service of only forty-five satisfies that provision?

OPINION, MR. JUSTICE WILLIAMS:

The record in this case shows that a venire issued for the summoning of forty-eight jurors for the Oyer and Terminer of Lebanon county.

This is the minimum number required by the act of 1834. In obedience to the writ the required number of names was regularly drawn from the wheel and the sheriff served notice upon all whom he could find and made return upon the venire accordingly. The record is certainly regular upon its face, and shows a properly organized court for the trial of the defendant. But it is urged that among the names drawn from the wheel two were names of persons who were then deceased, and one, the name of a person who had removed from the county, so that the names of but forty-five persons who were living and resident, were drawn and summoned as jurors. This was made the ground of a challenge to the array, which the court overruled. This action of the court is the subject of the several assignments of error in this court.

The officers who are charged by law with the duty of filling the jury wheel and drawing therefrom the names of jurors for the several courts, have no power over the lives or the resi-

dences of the citizens of the county. Either death or removal may happen to one whom the jury commissioners or judge may regard as a suitable man for a juror, and they may not know it; either event may happen after the name is in the wheel and neither the sheriff nor the jury commissioners have any knowledge about it. It is impossible that these officers should know exactly the situation of every man in the county at the moment when his name goes into the wheel, or when it is drawn out. All that can be demanded of them is that they shall discharge their duties with fidelity. The defendant has a right to insist that the machinery of the court shall be properly set in motion and supervised with impartiality and integrity. If the venire issues for a less number of jurors than the law directs, or if its execution is open to a charge of unfair and corrupt practices, the defendant is entitled to have the array dismissed upon his challenge; but he has not the right to insist that a venire upon which forty-eight names were drawn shall furnish forty-eight living resident jurors able to attend the sitting of the court. This has been repeatedly held by this court:" Foust v. The Commonwealth, 33 Pa. 338, Rolland v. The Commonwealth, 82 Pa. 306. In the latter case it was distinctly ruled that "it is not the right of a defendant to have forty-eight jurors in actual attendance in the Oyer and Terminer."

In that case forty-eight names were drawn from the wheel, but the sheriff's return showed that two of the number were not found, and that one was deceased. As in this case, of the forty-eight persons whose names were drawn, but forty-five were summoned. This was held not to be ground for challenge to the array. It is true that it appeared in that case that the sheriff did not know of the removals and death, when the names were taken from the wheel, but the fact was nevertheless clear from his return that but forty-five living, resident persons were drawn and summoned in obedience to the venire. The circumstance that the sheriff was ignorant of the death or removal of persons drawn, is significant only as showing his good faith, and the absence of any improper conduct on his part. If the failure to draw or summon the required number had been due to any improper or corrupt practices on the part of any of the officers charged with the performance of these

duties, a challenge to the array would have been sustained; not because less than forty-eight jurors were in attendance, but because the absence of those not attending was due to an interference with the due execution of the venire.

In Rolland v. Commonwealth, the fact that only forty-five living, resident jurors were drawn and summoned was due to circumstances over which the sheriff and jury commissioners had no control, and of which they had no knowledge. Their fairness and good faith were apparent, and were not assailed. In this case the same deficiency in the number of jurors was due to substantially the same circumstances. The evidence shows the fairness and good faith of the officers. The identity of one of those now shown to be dead, was fairly debatable and was fully considered by the officers. The removal of another seems to have been unknown at the time, and the death of the third, having occurred after his name was placed in the wheel, was thought to make it necessary for them to put his name in the panel. In all this there was an evident and honest purpose to discharge the duties resting on these officers. No corrupt interference with the execution of the venire is alleged, and certainly the evidence shows no reason for suspecting it. If the jurors in attendance were insufficient in number, the defendant had the right to special venires as often as might be necessary, and in this case such writs were actually issued until more than one hundred jurors were summoned before the box was filled. The challenge to the array was properly overruled, and the

Judgment is affirmed.